UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA POST and
JEFFREY POST,
     Plaintiffs,

-vs.-                             **DEMAND FOR JURY TRIAL**

SCOTT LOWERY LAW OFFICE, P.C.,
a foreign professional corporation,
     Defendant.
_____

# COMPLAINT & JURY DEMAND

    Plaintiffs Angela Post and Jeffrey Post, through counsel, Michigan Consumer Credit Lawyers, by Gary Nitzkin states the following claims for relief:

1. This is an action for damages, brought against a debt collector for violating the Fair Debt Collection Practices Act at 15 U.S.C. § 1692 et seq. ("FDCPA"), Michigan Collection Practices Act at M.C.L. § 445.251 et seq. ("MCPA") and the Michigan Occupational Code at M.C.L. § 339.901 et seq. ("MOC").

# JURISDICTION

2. This court has jurisdiction under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331,1337.

3.  This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims, pursuant to 28 U.S.C. 1367.

## PARTIES

4.  Each Plaintiff is a natural person residing in Kent County, Michigan.  Plaintiff is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Plaintiff is also a "consumer," "debtor" and "person" as the terms are defined and or used in the MCPA and MOC.

5.  The Defendant to this lawsuit is Scott Lowery Law Office, P.C. which is a foreign company that maintains registered offices in Tulsa County, Oklahoma.

## VENUE

6.  The transactions and occurrences which give rise to this action occurred in Kent County.

7.  Venue is proper in the Western District of Michigan.

## GENERAL ALLEGATIONS

8.   Plaintiff Angela Post had a credit account with Capital One  which she used to purchase goods and/or services for personal, family or household purposes.  Any resulting obligation to pay money was a "debt" as the term is defined and/or used in the FDCPA, MCPA and MOC ("The Debt").

9.  Defendant is a third party collection agency attempting to collect the Debt.  It claims that Mrs. Post failed to pay the Debt in full.

10. Sometime between May 2013 and August 2013, Mrs. Post made an arrangement with Defendant to satisfy the Debt. Mrs. Post agreed with Defendant to make a down payment of $500.00 and then pay $50.00 a month until the $9,200.00 balance was paid off.

11. Mrs. Post agreed to allow the Defendant to automatically withdraw these funds from her bank account.

12. Mrs. Post, relying upon this payment agreement, made her first payment of $500 to Defendant in early August, 2013. Subsequently, Defendant withdrew $50 per month from her account on the 3rd or 4th day of September, October, November, and December 2013.

13. In late December 2013, Defendant, through its representative, Joe Rico, called Mrs. Post and told her that the above settlement arrangement was coming to an end and that they needed to renegotiate. Mrs. Post told Mr. Rico that she was hoping to refinance but had not met with a representative from the bank yet. She told Defendant that she was waiting to decide what she could pay based on what rate at which she and her husband, co-Plaintiff Jeffrey Post, could refinance their home.

14. During this conversation, Mrs. Post asked Mr. Rico what the new negotiated amount of the debt was. Mr. Rico told Mrs. Post that the settlement amount would be $4,000.00. Mrs. Post told Mr. Rico that she needed to talk to her husband about making a new settlement arrangement with Defendant. She asked Mr. Rico to call her back in five minutes. Mr. Rico failed to call Mrs. Post back that day.

15. On or about February 5, 2014, Mr. Rico called Mrs. Post to discuss payment arrangements for the final balance of the Debt.  Mrs. Post told Mr. Rico that she did not

refinance her home and needed to work out payment arrangements because they could not afford to pay off the full balance. Mr. Rico told Mrs. Post that he would need to talk with his manager about the payment arrangement.

16. On or about February 7, 2014, Defendant, without Plaintiffs' permission or knowledge, withdrew $4,000.00 from Plaintiffs' joint checking account. The entire balance was not available, so Plaintiffs' bank transferred the deficiency of the balance from their savings account into their joint checking account.

17. Later that day, Mr. Post went to the grocery store and attempted to draft funds from his checking account to pay for the groceries.  He was unable to do so due to the Defendant having drained his joint bank account with Mrs. Post, without his knowledge or permission..  Mr. Post attempted to transfer funds from his savings account to his checking account but was unable to do so because that money was gone, too. Mr. Post left the grocery store without the full cart of groceries, confused, humiliated and embarrassed.

18. Mr. Post then went to his bank to find out why funds had been taken from his joint account. The bank representative told Mr. Post that the money was withdrawn by a law firm. The bank representative asked Mr. Post if his wife was divorcing him. Mr. Post felt "blindsided" and genuinely believed that Mrs. Post might be divorcing him. This made Mr. Post extremely scared and nervous.

19. On or about February 8, 2014, Mrs. Post called Defendant and asked to speak with a manager. During this conversation, Mrs. Post told Defendant how it had withdrawn money from their joint checking account without their permission. The manager told Mrs. Post that he did not know what happened and that he had to listen to the tapes. The

manager then told Mrs. Post if they refunded the $4,000.00 to her, that the debt would go back up to $9,200.00 and that she would have to send the check for $9,200.00 to them on that day.

20. Defendant's actions in withdrawing money from Plaintiffs' bank account forced Mrs. Post to borrow money from her mother, causing her embarrassing, humiliation and mortification.

21. On or about February 17, 2014, Mr. Rico told Mrs. Post, that they returned her $4,000.00.

22. On or about February 18, 2014, Mrs. Post called her bank and learned that the Defendant did not return these stolen and converted funds.  On or about February 27, 2014, Mrs. Post spoke with her bank again and the funds had still not been returned.

23. Sometime after February 27, 2014, Defendant called Mrs. Post, and told her that it did not have the funds. Defendant told Mrs. Post that she needed to make another settlement at a higher amount and if she did not, they would go after the full amount, which was about $9,200.00. Defendant told Mrs. Post that the new settlement started at $5,061.91 and that the balance would go down to $4,500 if she made a payment of $2,250.00 in February 2014 and a payment of $2,250.00 in March 2014. Mrs. Post did not agree to this proposed settlement because Defendant still had her $4,000.00.

24. On or about February 28, 2014, Defendant called Plaintiff, Mrs. Post, and told her that she had to go to Western Union to wire them the $4,000.00 to settle the alleged debt.

25. To date, Plaintiffs have not received any type of refund from Defendant in regards to the unauthorized funds that they withdrew from their checking account.

## COUNT I - FAIR DEBT COLLECTION PRACTICES ACT

26. Plaintiff reincorporates the preceding allegations by reference.

27. At all relevant times Defendant, in the ordinary course of its business, regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

28. Plaintiff is a "consumer" for purposes of the FDCPA and the account at issue in this case is a consumer debt.

29. Defendant is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

30. Defendant's foregoing acts in attempting to collect this alleged debt violated the following provisions of the FDCPA:

    a. 15 U.S.C. 1692d prohibits a debt collector from engaging in any conduct the natural consequences of which is to harass, oppress or abuse any person in connection with the collection of a debt. In this case, the Defendant wrongfully took funds that belonged to the Plaintiffs, without cause, excuse or the Plaintiffs' knowledge or permission. When Defendant was informed of this wrongful transaction, it not only made no attempt to return the funds, but has wrongfully retained them, attempting to extort a settlement from the Plaintiffs.

    b. 15 U.S.C. §1692e(10) prohibits a debt collector from using any false, deceptive or misleading representations in connection with the collection of a debt. Defendant tacitly lied to Plaintiffs' bank by representing that it had authority to take from their joint account, when, in fact, it had no such permission. Defendant lied to the Plaintiffs by representing to them that Defendant had restored those funds when in fact, it had not done so.

c. 15 U.S.C. §1692f prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect a debt. Defendant's actions in taking a substantial amount of money from the Plaintiffs is a horrific event. Defendant's lying about returning and restoring those funds to Plaintiff and wrongfully retaining them is unfair and unconscionable.

31. The Plaintiff has suffered economic, emotional, general and statutory damages as a result of these violations of the FDCPA.


## COUNT II - VIOLATION OF THE MICHIGAN OCCUPATIONAL CODE

32. Plaintiff incorporates the preceding allegations by reference.

33. Defendant is a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

34. Plaintiff is a debtor as that term is defined in M.C.L. § 339.901(f).

35. Defendant's foregoing acts in attempting to collect this alleged debt violated the following provisions of the MOC:

a. MCL §339.915e prohibits a licensee from making inaccurate or misleading statements in a communication to collect a debt. Defendant outwardly lied to Plaintiffs and their bank as described above.

b. MCL §339.915n prohibits a licensee from using harassing, oppressive or abusive methods to collect debt. Defendant has used all of these illegal methods as described above.

36. Plaintiff has suffered damages as a result of these violations of the Michigan Occupational Code.

37. These violations of the Michigan Occupational Code were willful, entitling Plaintiffs to treble damages, costs and attorneys' fees.

## COUNT III - VIOLATION OF THE MICHIGAN COLLECTION PRACTICES ACT

38. Plaintiff incorporates the preceding allegations by reference.

39.  Defendant is a "Regulated Person" as that term is defined in the Michigan Collection Practices Act ("MCPA"), at MCL § 445.251.

40. Plaintiff is a "Consumer" as that term is defined at MCL § 445.251.

41. Defendant's foregoing acts in attempting to collect this debt violated the following provisions of the MCPA:

   a.  MCL §445.252e prohibits a licensee from making inaccurate or misleading statements in a communication to collect a debt.  Defendant outwardly lied to Plaintiffs and their bank as described above.

   b.  MCL §445.252n prohibits a licensee from using harassing, oppressive or abusive methods to collect debt.  Defendant has used all of these illegal methods as described above.

42. Plaintiff has suffered damages as a result of these violations of the MCPA.

43. These violations of the MCPA were willful entitling Plaintiffs to treble damages, costs and attorneys' fees.

## COUNT IV – INTENTION OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

44. Plaintiffs reallege the above paragraphs as if recited verbatim.

45. Defendant's conduct in wrongfully seizing a substantial amount of money from the Plaintiffs' joint bank account without their knowledge or permission is extreme and outrageous.

46. Defendant's actions in seizing such funds were either intentional or reckless causing emotional distress to each Plaintiff including:

   a.  Mrs. Post had to borrow funds from her mother in order to meet household needs, causing her extreme embarrassment and humiliation;

   b.  Mr. Post was publicly embarrassed and humiliated at the grocery store when he was unable to pay for groceries.  He was further led to believe that his wife was leaving him and that she had cleaned out their bank account.

47. Plaintiffs are entitled to compensation for the Defendant's wrongful actions.

## COUNT V – MONEY HAD AND RECEIVED

48. Plaintiffs reallege the above paragraphs as if recited verbatim.

49. Defendant wrongfully seized $4,000 belonging to the Plaintiffs.

50. Despite repeated demands for repayment and the immediate return of those funds, the Defendant has failed to do so.

51. These funds belong to the Plaintiffs as neither of them ever gave permission or consent to the Defendant to take these funds.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury in this action.

## DEMAND FOR JUDGMENT FOR RELIEF

Accordingly, Plaintiff requests that the Court grant him the following relief against the defendant:

a.   Actual damages.

b.   Statutory damages.

c.   Treble damages.

d.   Statutory costs and attorneys' fees

Respectfully submitted,

April 7, 2014

/s/ Gary Nitzkin
GARY D. NITZKIN  P41155
TRAVIS SHACKELFORD P68710
MICHIGAN CONSUMER CREDIT LAWYERS
Attorneys for Plaintiff
22142 West Nine Mile Road
Southfield, MI 48033
(248) 353-2882
Fax (248) 353-4840
Email – gary@micreditlawyer.com